(No. 24402.— )

WILLIAM H. GROVES *vs.* THE FARMERS STATE BANK OF WOODLAWN *et al.*—(ED BOURLAND *et al.* Appellants, *vs.* THE FIRST NATIONAL BANK OF WOODLAWN, Appellee.)

*Opinion filed December 17, 1937—Rehearing denied Feb. 3, 1938.*

36

June C. Smith, and Hugh V. Murray, Jr., for appellants.

Gilbert & Gilbert, for appellee.

Mr. Justice Wilson delivered the opinion of the court:

This appeal is prosecuted from an order of the circuit court of Jefferson county of July 22, 1937, denying motions of thirty-four stockholders and eight depositors for leave to intervene in a stockholders' liability suit instituted on June 15, 1932, and a motion of the closed bank and its receiver to set aside orders entered on May 21, 1935, and June 10, 1936, respectively. The propriety of the order assailed requires a review of the previous proceedings.

On October 4, 1930, a State bank, the Farmers State Bank of Woodlawn, and a national bank, the First National Bank of Woodlawn, entered into an agreement whereby the State bank agreed to transfer all its assets to the national bank and the latter promised to assume and pay all the creditor liabilities of the former, and, further, to liquidate its business and affairs. The State bank agreed to save harmless the national bank from all losses which might ensue. The contract expressly recited that it was made for the purpose of liquidating the State bank and gave the national bank the right to determine the manner of accomplishing this objective. Although the agreement was authorized by the boards of directors of the respective banks

it was neither submitted to nor approved by the Auditor of Public Accounts. Voluntary liquidation of the State bank proceeded under the immediate supervision of John W. Watkins, formerly cashier of the State bank. Nearly two years later, June 15, 1932, William H. Groves, a creditor of the State bank, filed his bill in the circuit court of Jefferson county on behalf of himself and all other creditors of the State bank against the bank and its former and final stockholders to enforce the superadded constitutional liability of the stockholders. One allegation of the bill merits mention. The complainant, after reciting that the national bank had, by agreement with the State bank, assumed and paid all, or nearly all, of the deposit accounts of the State bank, alleged that the national bank and another bank *"now are the creditors* to which nearly all of the indebtedness of said Farmers State Bank is payable at this time, and now the total indebtedness aforesaid amounts to approximately $43,500." Groves sought the appointment of a receiver (1) to collect the stock liability and (2) to collect and convert into money the remaining assets of the bank. Practically all the stockholders were served with process or waived summons and entered their appearances. These stockholder defendants were defaulted, however, for want of answers. On July 12, 1932, a decree. among other things, fixed their liability at $100 per share, and assessed thirty-nine named persons amounts equal to the par value of the shares they owned or had owned. Watkins was appointed receiver and authorized to collect the stock liability, to collect and convert into money the remaining assets of the State bank, and to distribute the moneys pursuant to the directions of the court. This decree also narrated the arrangement between the State bank and the national bank of October 4, 1930, by which the latter assumed the liabilities of the former, found that the national bank was one of the two principal creditors of the State bank, and, particularly, that it was a creditor to the

extent of $40,000. No appeal was taken by any stock-holder from this decree. Watkins, as receiver, proceeded to collect the amounts due from the stockholders and, also, to administer and liquidate the pledged assets of the State bank.

On August 30, 1932, upon a petition and report of Watkins, as receiver, an "order and decree" was entered, finding, among other things, (1) that the total indebtedness of the State bank at the time of the receiver's appointment was $45,532.63, of which the State bank owed the national bank $40,000, (2) that the receiver had collected $11,382.37, and directed the payment to all creditors, including the national bank, of a dividend of twenty-five per cent of the amounts of their respective claims, and, further, that other claims against the bank be filed with the receiver on or before the first day of the October term of court, 1932, and that the requisite notice be published once in each week for three successive weeks in a local newspaper. When additional moneys had been collected by the receiver, other orders for payment of dividends were entered on November 15, 1932, December 9, 1932, January 9, 1933, as of July 12, 1932, and May 23, 1934. The record discloses no objection by anyone to the payment of these dividends to the national bank as a creditor of the State bank.

Two and one-half years after the entry of the original final decree of July 12, 1932, namely, December 5, 1934, the national bank filed an intervening petition in the proceeding naming as parties defendant thereto the State bank and Watkins, as receiver. This petition sought the enforcement by the court of the agreement of October 4, 1930, between the State bank and the national bank, alleging that as of November 27, 1934, $15,774.30 was due from the State bank upon its liability account. In addition, the petition asked the removal of Watkins, as receiver, and the appointment of a successor to collect the liability remaining due from stockholders. In reality this petition was the

national bank's claim under the contract of October 4, 1930. The State bank and Watkins, as receiver, on January 5, 1935, filed their answer to the intervening petition of the national bank, averring, among other things, that the agreement of October 4, 1930, was invalid and *ultra vires,* and, hence, unenforceable against the State bank. In particular, they charged that the agreement was not consummated or made effective by the parties thereto prior to November 4, 1930, the day the amendments of 1929 to the Banking act were ratified by the people of the State, and that by amended section 15 the agreement became "unlawful, ineffective and inoperative, and in violation of the provisions of the statute." The answer denied that the balance due to the national bank was $15,774.30, but countered that the true balance due the national bank was approximately $5500. Defendants answered, further, that the national bank did have a valid claim against the State bank "for the money advanced by it for the use and benefit of said Farmers State Bank" and that the latter "owes said balance, wholly outside of the said contract or agreement" of October 4, 1930, although insistent that the agreement was void. The State bank and Watkins, by their answer, urged that the original decree of July 12, 1932, was final and binding on all parties to the suit, including the national bank when it became a party to the suit by filing its intervening petition and, specifically, "that whether said decree was right or wrong, at the time it was entered, it constitutes a final decree and adjudication of this court, and within the jurisdiction of this court, and cannot now be challenged, modified or set aside." They further affirmed the legality of the appointment of Watkins, as receiver, maintaining that he was acting in such capacity under a final decree of the court in all respects legal and proper. Referring to the decree of July 12, 1932, they directed attention to the fact that the right of a court of equity to appoint such receiver remained an open and unsettled ques-

tion until the opinion of this court in *People* v. *Shurtleff,* 353 Ill. 248, was filed on June 15, 1933.

By what is denominated an "Interlocutory Order and Decree," of May 21, 1935, the court found that the national bank had substantially complied with and performed the terms and conditions of the agreement which existed between the parties, and resolved the material issues arising upon the intervening petition and answer concerning the dealings of the parties and the amount then due and payable to the national bank, the intervening petitioner, in its favor and against the State bank and its receiver, the defendants. The order recounted that the affairs of the State bank had been in liquidation since October 6, 1930, and declared the receivership should be completed by January 1, 1936. The amount of the claim of the national bank under the contract of October 4, 1930, was fixed at $70,469.70. Of this amount the chancellor found that the bank had received payments and credits aggregating $57,841.88, leaving a balance due under the contract, on May 21, 1935, the day the order was entered, of $12,627.82, which sum the receiver was commanded to pay in due course of administration, as directed by the court. The court further prescribed that a lien be impressed upon all of the assets in the hands of the receiver in favor of the national bank, until the amount of its claim should be fully paid, and, that, pending the completion of the receivership, in the furtherance of justice, the cause should remain on the docket until the further order of the court. By this order, the court, in effect, enforced the agreement of October 4, 1930. No appeal was taken by the defendants, the State bank and Watkins, as receiver, from the order of May 21, 1935.

June 10, 1936, an agreed decree was entered on the intervening petition, by which the court ordered the receiver to pay to the master in chancery of the court all the moneys then in his possession and deliver to him all the

remaining assets of the State bank. He, in turn, was directed to sell such assets at public sale for cash. In obedience to the court's command the receiver transferred the assets of the State bank in his possession or under his control to the master. The latter sold the assets to the national bank for $5200, filed his report of sale on August 24, 1936, and, on September 4, 1936, the court approved the report of sale and directed the master to pay over the net proceeds to the national bank.

In 1937, shortly after the publication of our opinion in *Continental Illinois Nat. Bank* v. *Peoples Trust and Savings Bank,* 366 Ill. 366, but long after the completion of the liquidation of the State bank's assets under the contract of October 4, 1930, namely, July 2, 1937, Ed Bourland and thirty-three other stockholders of the State bank filed a motion on behalf of themselves and the other stockholders for leave to file a petition, styled an intervening petition. Accompanying the motion and petition was a motion of eight persons, assertedly unpaid depositors of the bank, seeking permission to join with the stockholders in their petition, which they asked leave to adopt. The stockholders proclaimed the invalidity of the liquidating agreement of October 4, 1930, and charged that the national bank was not a creditor of the State bank. They asserted, further, that the orders appointing a receiver for the bank and its assets, and the sale of the assets, were beyond the jurisdiction of the court. Specifically, the charge was made that the payment of funds by the receiver to the national bank on its claim, predicated upon the agreement of October 4, 1930, constituted a misappropriation and diversion of the funds, and had the effect of compelling Bourland, his co-petitioners, and the other stockholders to pay a claim for which they were not liable under section 6 of article 11 of our State constitution, and that the payment constituted the taking and the appropriation of their money in violation of the constitutional provision, and, in

addition, without due process of law in contravention of the guarantees of both the State and Federal constitutions. The relief prayed for was the entry of an order requiring the national bank to account for all funds received by it on its claim, ascertaining the amount paid by each of the stockholders of the State bank in satisfaction of their liability, and, upon the restoration of such funds, the redetermination of the rights of all the parties. On July 6, 1937, the State bank and Watkins filed their motion asking the court to vacate the orders of May 21, 1935, and June 10, 1936, and all other orders entered on the intervening petition of the national bank. This motion alleged that the orders so sought to be set aside were interlocutory, inadvisedly entered, beyond the jurisdiction of the court, and, consequently, void and ineffective. The affirmative relief sought was a decree sustaining a portion of their defenses previously interposed to the intervening petition of the national bank filed on December 5, 1934, to the effect that the contract of October 4, 1930, was not consummated and did not become effective prior to November 4, 1930, and that by amendments to section 15 of the Banking act, approved that day by the electorate of the State, the contract became illegal before it was consummated, or any obligations or liabilities were incurred thereunder by either of the signatories. Upon the hearing on the three motions the national bank tendered into open court all sums due to the eight alleged depositors named in the petition of intervening creditors. On July 22, 1937, the court, in its order, found that all orders, judgments and decrees, previously entered in the proceeding had become final and binding upon petitioners and all the parties in the case, and, accordingly, denied each of the motions. These motions and petitions of the three groups of appellants presented a question of the proper construction of section 6 of article 11 of our constitution and raised the issue of due process of law. Their appeal has been properly prosecuted directly to this court.

Bourland and his co-petitioners, the State bank and Watkins, the appellants, make numerous contentions in order to obtain a reversal. The principal basis for their attack upon the orders and decrees entered upon the intervening petition of the national bank, the appellee, is that the stockholders were not made parties defendant to that petition; that the stockholders had a right to be heard upon the question as to who were the creditors of the State bank and the true amount of the State bank's indebtedness, as well as the right, after payment of all genuine creditors, to receive back any surplus moneys remaining of the amounts paid by the stockholders on account of their liabilities as such. To afford a basis for consideration of the foregoing contentions, appellants also claim that the orders and decrees in question were not final and, hence, appealable, and that, in any event, the court retained control of any and all orders, irrespective of their finality, and could at any time revise and correct or set them aside in the interest of justice.

Each of appellants' motions, filed after the State bank's business was completely liquidated, is predicated, in part, upon the theory that the contract of October 4, 1930, was *ultra vires* and illegal, and, hence, may be attacked at this late date. The contract now challenged was executed before the effective date of the amendments of 1929 to section 15 of the Banking act. The present case does not, therefore, come within the holding of *Continental Illinois Nat. Bank* v. *Peoples Trust and Savings Bank, supra,* and the agreement of October 4, 1930, would not necessarily be invalid under that decision. On the day the agreement was made such contracts were regarded as legal by the bench and bar of the State, as well as by bankers and the Auditor of Public Accounts. Reference need be made to only one case, *Sherrard State Bank* v. *Vernon,* 243 Ill. App. 122, where the Appellate Court for the Second District pointed out that failing banks may wind up their affairs in

other ways than by the action of the Auditor of Public Accounts in appointing a receiver, for example, as by entering into a contract to have another bank assume its liabilities and take its assets. In that case the Appellate Court, answering the contention that the only way the affairs of a State bank could be wound up was by the method prescribed by statute for the consolidation of banks or by dissolution under supervision of the Auditor of Public Accounts, well said: "It is not the law that the only way a failing bank can wind up its affairs is by action of the Auditor of Public Accounts in the appointment of a receiver. And it is not beyond the power of the banks to enter into the contract in question. * * * At common law neither the directors nor a majority of the stockholders had power to sell all the property of a growing, prosperous corporation, able to achieve the objects of its creation, as against the dissent of a single stockholder. Where, however, the corporation is insolvent or in failing circumstances and the business can no longer be carried on profitably and advantageously, such a sale may be made and minor stockholders cannot object thereto in the absence of fraud. [Citing cases.] Sound reasoning dictates that the directors of a bank in failing circumstances should have the right to enter into such a contract as the one here involved, not only as a matter of law but as a matter of public policy."

Two appellants, the State bank and its receiver, attack the order of May 21, 1935, establishing the claim of the national bank against the State bank under the contract of October 4, 1930, and directing its payment out of the assets of the bank. The circuit court of Jefferson county had jurisdiction to supervise the liquidation proceeding involving the affairs of the insolvent State bank. The Banking act makes provision for filing claims against insolvent banks, and expressly declares (Ill. Rev. Stat. 1937, p. 192) that the "allowance or disallowance of such claims by said court in connection with the said proceedings shall be deemed

an adjudication in a court of competent jurisdiction." The decree of May 21, 1935, was a final and appealable order between the parties. It is immaterial that the order was captioned "interlocutory." The test as to whether a judgment, decree, or order is final and appealable is whether it terminates the litigation on the merits of the case and determines the rights of the parties. (*People* v. *Stony Island State Savings Bank*, 355 Ill. 401.) An order has the essential elements of finality when, if affirmed, the trial court has only to proceed with its execution. (*Rosenthal* v. *Board of Education*, 239 Ill. 29.) A decree may be final and appealable even though it reserves incidental matters for consideration. (*People* v. *Stony Island State Savings Bank*, *supra*.) The provisions of the decree of May 21, 1935, describing the method of carrying them into effect were modal and did not purport to establish the rights between the parties. On the other hand, the rights between the parties were definitely settled by the portion of the decree which fixed the amount remaining due from the State bank to the national bank, and, to the extent it determined the rights of the national bank as a creditor of the State bank, was final as between them. It follows, necessarily, that the fact the order was incorrectly referred to as interlocutory cannot avail appellants. No appeal was taken and no further attempt was made to raise the questions decided on May 21, 1935, until publication of the decision in the *Continental Bank case*, more than two years later. By failing to appeal from this order before the time prescribed by the statute had expired they forfeited their right to complain. We are not concerned with the correctness of this order. It has now become effective because no appeal was prosecuted therefrom. Similarly, the order of June 10, 1936, of which these appellants unequivocally indicated their approval by notation of counsel on the face of the order, is immune from attack on the motion to vacate. Furthermore, the record discloses that both decrees have

been fully executed with respect to the disposition of the assets of the State bank and their application toward the discharge of its liability to the national bank.

We note that the Auditor of Public Accounts, so far as the record shows, never disapproved the receivership or the liquidation of the bank under the supervision of the court. He did not invoke the jurisdiction of the circuit court of Jefferson county for the purpose of accomplishing the dissolution and settlement of the closed bank's affairs. Furthermore, he did not assume to act under the part of section 11 of the Banking act (Ill. Rev. Stat. 1937, p. 191,) which provides: "If the Auditor determines that the bank cannot be reorganized and that the same should be liquidated through receivership he shall appoint a receiver, and require of him such bond and security as he deems proper." For practical purposes, he may be said to have acquiesced in, if not confirmed, Watkins' appointment as receiver.

The intervening creditors were depositors in the State bank. Conformably to the order of the circuit court receiver Watkins gave requisite notice by publication to all creditors that claims must be filed with him on or before the October, 1932, term of the court in order to participate in the distribution of the assets of the bank. Intervening creditors failed to file their claims as required by the court orders and they proffered no explanation as to why they failed to present their claims within the time designated. The motion of these appellants was not verified and they neglected to advise the trial court of the amount of their respective claims. Nor has this court been advised in this respect. It further appears that appellee tendered payment to these creditors in open court at the hearing, and, according to appellee, each of them has received payment in full. Payment has not been denied. The familiar maxim *de minimis non curat lex* is singularly applicable to intervening creditor appellants.

The assessments for stock liability rendered against Bourland and the thirty-three other stockholders who joined

with him were entered by default on July 12, 1932. No motion was made within the time specified by law to set aside the default order. Nor was an appeal prosecuted from this original final order. By their so-called intervening petition filed in July, 1937, however, the stockholders, previously mentioned, charged that they and others similarly situated had paid approximately $20,000 in satisfaction of their liability in accordance with the decree of July 12, 1932, and, further, that all of the funds obtained by the national bank from Watkins, as receiver of the State bank, and later, the master, constituted trust funds which were wrongfully received in payment of its illegal claim based upon the agreement of October 4, 1930. The decree, as stated, was final and appealable. The stockholders of the State bank, by answers to Groves' bill could have met the issues five years ago as to the validity of the agreement of October 4, 1930, and whether the national bank was a creditor of the State bank within the contemplation of the constitution. They elected, instead, to abide by the final and appealable decision of those issues. The stockholders, by their own inaction, are now foreclosed upon these same issues which they seek to renew on the present appeal. Conceding that these stockholders paid their liability under a mistake of law, as they maintain, in effect, the concession would not aid them. There was neither fraud, misrepresentation, nor mistake of fact. Money voluntarily paid under a claim of right to the payment, with full knowledge of all the facts by the person making the payment, and without fraud or mistake of fact, cannot be recovered back upon the ground that the claim was illegal unless the payment was made under circumstances amounting to compulsion. (*Illinois Glass Co.* v. *Chicago Telephone Co.*, 234 Ill. 535; *City of Chicago* v. *McGovern*, 226 id. 403; *People* v. *Foster*, 133 id. 496.) It follows that money paid under a mistake of law and an erroneous judgment cannot be recovered.

The circuit court of Jefferson county is a court of general and original jurisdiction. Each appellant appearing in

the petitions to intervene and the motion to vacate was a party to the representative suit instituted by Groves, as a creditor of the State bank, to enforce the stockholders' liability, directly by name or by proper representation as members of a class. The stockholders, the State bank and its receiver were named defendants. Not only the stockholders but the other creditors of the State bank were also adequately represented. The circuit court, it is settled, has jurisdiction to entertain a representative suit in equity in which a remedy is furnished to a class of individuals who have common rights and who need protection, and where the remedy is pursued by a complainant who has the right to represent the class to which he belongs, other members of the class are bound by the results in the case until the decree rendered is reversed on appeal. (*Leonard* v. *Bye,* 361 Ill. 185.) All the creditors were, accordingly, to be deemed parties to the cause. They are now bound by the antecedent proceedings. The final decision of the court therein binds all persons, whether stockholders or creditors of the State bank. It was a judgment against the State bank, determining the liability of the State bank to the national bank from which the liability of the stockholders therefor logically follows. Moreover, the original final decree against the stockholders, on July 12, 1932, definitely decided that the national bank's claim was a valid one and that it was therefore a creditor of the State bank. No direct relief is sought, even now, against that decree. The court had general jurisdiction of the subject matter, and if it exercised its authority in an irregular manner appellants are precluded from taking advantage thereof in the manner attempted. Fraud is not charged against any party, nor against the court. Most of the matters were litigated and strenuously resisted. Watkins, as receiver and as representative of the stockholder appellants and their interests, and the State bank opposed the claims of the national bank, the appellee, interposed the same de-

fenses, and presented the same questions now renewed by this attempted intervention. Eventually, in 1935, the litigation with respect to the contract between the State and the national banks was consummated. Within a reasonable period thereafter, the receiver fulfilled his mission and the receivership was terminated. The orders regarding the rights of the interested parties were final and appealable. The mere fact that contracts of the character of the agreement of October 4, 1930, entered into after the effective date of the amendments to section 15 of the Banking act have been declared void (*Continental Nat. Bank case*) is immaterial with respect to judgments, orders and decrees which had become absolute prior to that decision.

The State bank and Watkins, as well as those appellants purporting to be intervening petitioners, must take the record as they found it in July, 1937. The two first named, in their answer to the intervening petition of the national bank, filed on January 5, 1935, correctly stated the law now applicable to appellants. From their abstract, page 51, it appears that they then made the following pertinent, succinct statement with respect to the status of the national bank, if permitted to intervene and become a party to the suit: "It must take the pleadings and issues as it finds them. That it cannot, as such intervenor, challenge the legality of any decree heretofore entered in this cause, and by reason of the facts herein alleged is estopped from now challenging the validity of said decree, or any order heretofore entered in this cause, and is bound by all the provisions of all prior orders and decrees entered herein." Intervention, even when permissible, must be had during the pendency of an action before the issues between the original parties have been determined and a final decree has been entered. (*Haase* v. *Haase*, 261 Ill. 30.) Every material issue and question raised in the intervening petition and motion to vacate was tried and considered on the merits by a court of competent jurisdiction. In particular, by a succession

of final decrees, not appealed from, the trial court determined not only that the national bank was a creditor of the State bank but also the amount of its claim. Under the circumstances disclosed by the record, the allegations that the agreement of October 4, 1930, was *ultra vires* and void, and that the trial court lacked authority to appoint a receiver for the liquidation of the assets of the State bank are insufficient, even if true, to afford a basis for intervention. The circuit court, in refusing to allow appellants to re-litigate the closed issues and thereby revive a lawsuit well terminated, cannot be said to have abused its sound judicial discretion.

The order of July 22, 1937, is affirmed. .

*Order affirmed.*