(No. 3097—

CITY OF OGLESBY, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed December 20, 1938.*
*Rehearing denied June 15, 1939.*

D. J. CAMPEGGIO and M. D. MORAHN, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant herein seeks an award for a refund of public utility tax paid by it under the terms of an Act known as the Public Utility Tax Act, entitled "An Act in Relation to a Tax Upon Persons Engaged in the Business of Transmitting Telegraph or Telephone Messages, or Distributing, Supplying, Furnishing or Selling Water, Gas or Electricity," said Act being found in Smith-Hurd Illinois Revised Statutes, 1935, Chapter 120, Sections 440 et seq. The complaint recites that on August 12, 1935 claimant paid to the Director of Finance, the sum of One Hundred Fifty-four and 45/100 ($154.45) Dollars and thereafter during each of the following months including February, 1937 made additional pay-

ments to a total amount of Two Thousand One Hundred Eighty-nine and 45/100 ($2,189.45) Dollars; that each of said payments and the monthly tax returns accompanying same were made under protest, and under a contention that said tax and the Act under which same were collected were unconstitutional and void; that the Supreme Court of the State of Illinois on the 12th day of February, 1937 filed its Opinion in the case of the *City of Chicago* vs. *Ames,* reported in *365 Illinois Supreme, Page 529* in which it held said Act to be unconstitutional and void.

The Attorney General of the State has filed a motion to dismiss the claim on the following grounds:

"1.    The complaint does not allege the necessary facts to show that the payments made were, in fact, made involuntarily or under duress or compulsion but only alleges the conclusion that such payments were so made.

"2.    The complaint does not allege the necessary facts to show that it did not have a complete and adequate remedy at law or equity.

"3.    The complaint does not allege under what provision of the constitution or statute of the State of Illinois a tax paid, even though under protest, where an injunction is not sought is not paid voluntarily, nor under what provision of the constitution or statute a tax paid voluntarily to the State of Illinois, even under an unconstitutional law, can be recovered back.

"4.    The complaint does not allege facts that show said tax was not paid either through ignorance of the unconstitutionality of the Public Utility Tax Act, or a mistake of law as to the unconstitutionality of such Act.

"5.    The Court of Claims has no jurisdiction to make an award where the State would not be liable at law or in equity if suable."

Both respondent and claimant have filed Briefs in support of their contentions and the matter has also been heard on oral argument. The claimant contends that the payments in question were each made under protest and under duress to avoid the penalties provided by statute, and were therefore involuntarily made. Claimant relies upon the ruling laid down in *Benzoline Motor Fuel Co.* vs. *Bollinger,* 353 Ill. 600, to the effect that payments made under an unconstitutional Act to avoid the penalties thereof are considered to have been

made under implied or moral duress and hence involuntarily made. Claimant seeks its award for a refund by reason of the following proviso contained in said Public Utility Tax Act, to-wit:

"If it shall appear that an amount of tax, penalty or interest has been paid which was not due under the provisions of this Act, whether as the result of a mistake of fact or an error of law, then such amount shall be credited against any tax due, or to become due, under this Act from the public utility which made the erroneous payment, or such amount shall be refunded to such public utility by the department."

Par. 445, Chap. 120, Ill. State Bar Statutes, 1935.

The only reason for the payment of said tax was because of the provisions of said Act. The payments were due and were made *"under the provisions of said Act"*—but such Act was declared unconstitutional. The determination of claimant's rights therefore rest not upon the above Act or any part thereof, but upon its general right, if any, to a refund for money voluntarily and improperly paid.

The Attorney General contends that the complaint herein does not allege any facts to show that the payments complained of were in fact made under duress or compulsion, and also urges as a further objection, that no injunction was sought by claimant to restrain the payment of said funds into the State Treasury, and that the failure of claimant to exercise its right to such injunction bars it from an allowance of its claim by this court.

*Sub-section 2 (a), Section 172* of *Chapter 127, Illinois Revised Statutes* of *1937* provides:

"It shall be the duty of every officer, board, commission, commissioner, department, institute, arm or agency brought within the provisions of this Act by Section 1 hereof to notify the State Treasurer as to money paid to such officer, board, commission, commissioner, department, institute, arm or agency, under protest, and the Treasurer shall place such money in a special fund to be known as the protest fund.

"At the expiration of thirty days from the date of payment the money shall be transferred from the protest fund to the appropriate fund in which it would have been placed had there been payment without protest unless the party making such payment shall have filed a complaint in chancery and secured within such thirty days a temporary injunction restraining the making of such transfer, in which case such payment and such other payments as the court may direct subsequently made under protest by the same person, the transfer of which is restrained by such temporary injunction, shall be held in the protest fund until the final order or decree of the court."

Claimant herein did not obtain any such temporary injunction, but now relies upon the fact that during the time

these payments by the City of Oglesby were being made, there were already suits started by other claimants to restrain the Director of Finance and the State Treasurer from forcing compliance with said Utility Tax Act by which the constitutionality of the Act was being tested. Claimant contends it would have been an unreasonable burden on the City to have spent public funds for the prosecution of any suit or suits to enjoin the payment of the funds thus paid by it into the State Treasury when a similar suit was then pending.

The question of voluntary payments was considered by this court at some length in the case of *Butler Company* vs. *State*, 9 C. C. R. 503, and therein it was stated (p. 509):

"The question as to when illegal or excessive tax payments may be recovered is the subject of an exhaustive annotation in 64 A. L. R., commencing on page 9. The general rule is set forth on page 10, as follows:

'It is a well-settled rule, in the absence of statute, that the right of a party who has paid a tax, local assessment, or license fee, to recover the same back, depends upon whether or not the payment was involuntary. If the payment was voluntary, it cannot be recovered; if it may be deemed involuntary, a recovery may be had.'

"Under the heading of general rules it is pointed out on page 11 that 'the terms 'voluntary' and 'involuntary' when used with reference to payments of taxes, are not applied in their ordinary sense.'

"Under the heading 'Existence and adequacy of other remedy or relief,' the annotator, on page 54, says:

'There is a conflict in the authorities on the question whether the existence of another remedy or means of relief will render a payment of taxes voluntary, where the taxpayer neglects to avail himself of such remedy.

'It has frequently been held that the compulsion brought to bear upon the taxpayer must, in order to render his payment involuntary, have been of such a nature that he had no other reasonable means of immediate relief from the same, except by making the payment.'

"After citing a long list of cases from different jurisdictions, he proceeds (page 55):

'And according to this line of cases, representing, probably, the weight of authority, where the taxpayer has some other legal remedy or protection against the coercive acts of the collecting officer, he is bound to avail himself thereof, and, if he neglects to do so, and pays the tax, such payment is deemed voluntary.'

"The annotation in 64 A. L. R. 9, is supplemented by a further annotation in 84 A. L. R. 294."

In *Rohde* vs. *City of Chicago*, 254 Ill. App. 590, the court denied judgment for plaintiff who, for the privilege of operating a beauty parlor, had paid a city license under an ordinance later held invalid. In its opinion therein the court concurred

in the following statement from Dillon on municipal corporations:

"The authorities agree that a payment made under compulsion or duress may be recovered. The application of the rule has not been always uniform. Compulsory payment is primarily a question of fact. No precise rules can be laid down as to what constitutes a compulsory payment."

Claimant cites the case of *Illinois Merchants Trust Co.* vs. *Harvey,* 335 Ill. 284, in support of its contention for an award. In that case Harvey and others had leased certain real estate on Wabash Avenue in Chicago to Marshall Field. Lessee was required to erect a building thereon not less than eight stories in height. The lease as extended was to operate until 1980. The lease contained a forfeiture provision that unless defaults in the performance of covenants were rectified within sixty days after notice was given, the lessors would have the right to exercise an option to declare the lease terminated. The income tax on the rental was paid by lessors for the years 1914-15, and they in turn demanded of and received such income tax from the lessees. Under a proviso contained in the lease the lessees were to pay "all taxes, water rates, special assessments and all other similar impositions of every kind which should be levied or imposed upon the premises." By reason of an amendment to the income Tax Law, the lessees refused to reimburse lessor subsequent to the year 1915. On March 9, 1921 lessor notified lessees that they were in default under the terms of the lease for non-payment of the sum of $8,350.97 for such income tax payments, and that unless payment was made to lessor within sixty days, lessors would exercise their election to terminate such lease. Lessees protested against making the payment but paid, as they stated they could not afford to involve the forfeiture of the lease, as such forfeiture would involve a loss of some $2,000,000.00. Later a suit in assumpsit for the recovery of the money was filed by lessees. The Supreme Court in considering the question of voluntary payment under compulsion and duress said (p. 291):

"The rule was early laid down in *Elston* vs. *City of Chicago*, 40 Ill. 514, that a payment made with full knowledge of all the facts and circumstances and in ignorance only of legal rights cannot be recovered; that in order to render a payment compulsory such pressure must be brought to bear upon the person paying as to interfere with the free enjoyment of his rights of person or property, in the sense of depriving him of the exercise of his free will. The rule generally followed in tax cases is, that although the

statute imposing the tax be unconstitutional and the tax illegal, it cannot be recovered if paid voluntarily or under mistake as to legal rights but with knowledge of the facts, where an opportunity is afforded to defeat the tax."

The court then adds:

"From the Illinois cases cited, and those of other jurisdictions, the rule is deducible that where one, to prevent injury to his person, business or property, is compelled to make payment of money which the party demanding has no right to receive and no adequate opportunity is afforded the payor to resist such payment, it is made under duress and can be recovered."

After reviewing a number of cases the court in applying the law to the facts in question said (p. 296) :

"We are of the opinion that the forfeiture threatened against defendants in error (the tenant) was cognizable in equity, and that the demand being invalid and the result of a forfeiture being of a serious consequence to defendants in error, equity would have relieved against the same. Defendants in error had sixty days in which to apply for such relief. There was adequate time to secure the aid of equity and that court was open to them. It follows that the payment by them was voluntary and not made under compulsion or duress."

On a rehearing the court re-adopted the foregoing as its conclusions.

The rule as to non-recovery of voluntary payments has been re-affirmed in the recent case of *Groves* vs. *Farmers State Bank*, 368 Ill. 35, wherein the court said (p. 47) :

"Money voluntarily paid under a claim of right to the payment, with full knowledge of all the facts by the person making the payment, and without fraud or mistake of fact, cannot be recovered back upon the ground that the claim was illegal unless the payment was made under circumstances amounting to compulsion."

No distinction in the matter of tax refund can be made in favor of claimant as a municipal corporation, as distinguished from a private enterprise, in regard to payments made under the said Public Utility Tax Act, for said municipal corporation in the operation of the utility was engaged therein in its private capacity and not in its governmental capacity. In considering the question of such distinction the Illinois Supreme Court in the case of the *City of Chicago* vs. *Ames*, 365 Ill. 529, said:

"The use of the term 'person' in statutory enactments has been held to include municipalities A municipal corporation selling gas, water or electricity for private consumption does so in its proprietary rather than its governmental capacity. * * * No distinction is to be drawn between such business of selling when indulged in by a municipality and when engaged in by a private corporation. * * * When a municipality goes into the business of furnishing water for sale * * * such municipality does not sell in the capacity of sovereignty but in a private capacity."

Major reliance is placed by claimant upon the fact that in the case of *Benzoline Motor Fuel Company* above referred to (353 Ill. 600), the taxing Act was declared unconstitutional and that the Court of Claims thereafter, in the case of *Benzoline Motor Fuel Company* vs. *State,* 9 C. C. R. 178, granted an award to claimant therein for the payments previously made by it under protest.

An examination of the latter case will disclose that the Benzoline Motor Fuel Company upon making the payment of tax demanded of it, followed its payment under protest by obtaining a temporary injunction from the Circuit Court of Sangamon County; that the State Treasurer notwithstanding such injunction transferred said fund to the State Treasury, while said injunction proceedings were pending; that the Supreme Court entered a final order directing repayment to the claimant of the sum to which it was entitled.

Thus we see that the Benzoline Motor Fuel Company case is not in point and does not support the contention of claimant herein.

Payment under protest, in order to justify a recovery of funds from the State involves not only due notice of protest at the time of such payment, but requires the further action upon the part of claimant of enjoining the transfer of such money until the legality of such payment can be determined. This provision is an important one as a matter of public policy to the entire financial structure of the State government. It is only by due notice of what funds previously paid to the State officers are tied up by injunction proceedings that the Director of Finance can determine the correct financial status of the State. The fact that some other party had enjoined the transfer of funds collected from it cannot serve the claimant herein as a compliance upon his part with such statutory requirement. In the ordinary payment of taxes by an individual, if two taxpayers should individually file their protest with the County Treasurer at the time such taxes are paid, and one of such taxpayers should thereafter file his objections in the County Court to test the validity of such tax, and the other individual would do nothing but stand by to wait the outcome of the other's suit, he could not recover his taxes regardless of the outcome of the County Court proceedings on the objections filed by such other party.

The statutes provided a full and complete remedy for the claimant herein and it should have taken advantage of the provision of law enacted for its protection. As in the Marshall Field case above quoted, claimant had ample time in which to seek its injunction, and having failed to take advantage of the remedy provided by statute it follows that the payment made by claimant was made voluntarily and without compulsion or duress.

As the complaint fails to show compliance by claimant with those requirements which would warrant an award by this court for a refund of the tax in question, the motion of the Attorney General is allowed and the claim dismissed.