**HARTFORD ACCIDENT & INDEMNITY COMPANY, Plaintiff–Appellee,**

v.

**CHICAGO HOUSING AUTHORITY, Defendant–Appellant.**

No. 92–3672.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1993.

Decided Dec. 14, 1993.

Joshua G. Vincent, Nancy G. Lischer (argued), D. Kendall Griffith, Thomas Crisham, Hinshaw & Culbertson, Chicago, IL, for plaintiff-appellee.

Stanley L. Hill, Christopher W. Graul, Jennifer Lee (argued), Hill & Associates, Chicago, IL, for defendant-appellant.

Before BAUER, EASTERBROOK and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

Hartford Accident & Indemnity Company brought this diversity action seeking a declaratory judgment of its rights and the return of payments made pursuant to an insurance contract it sold to the Chicago Housing Authority ("CHA"). The CHA counterclaimed, seeking a declaratory judgment of its rights pursuant to the same insurance contract. Each party filed a motion for summary judgment. The district court granted Hartford's motion and denied the CHA's motion. We affirm.

I.

The CHA purchased insurance policies from two insurers to insure itself against loss for the period of April 1, 1983 to April 1, 1984. First, the CHA purchased an insurance policy of excess comprehensive general liability and automobile insurance from the Holland–America Company. The limits of Holland–America's liability are "$1,000,000 Per Occurrence and in the Aggregate where applicable excess of $150,000 Per Occurrence Self Insured Retention $1,500,000 Annual Aggregate Retention." For the sake of clarity, we set out in more detail the general scope of the risk assumed by Holland–America for a given claim against the CHA in a policy year. The CHA is to pay up to $150,000 per claim, but not more than a total of $1,500,000 in a given year. Holland–America is to pay the excess of $150,000 per claim, but not more than $1,000,000 for that claim. Once the CHA has exhausted its $1,500,000 limit for the year, however, Holland–America must pay an entire claim up to $1,000,000.

The Holland–America policy also includes a minor variance in this coverage scheme. If a claim is categorized as arising "as a result of the products and/or completed operations hazards,"[1] then Holland–America's risk is limited to $1,000,000 in the aggregate per year. The only situation described in the Holland–America policy concerning an aggregate limit of liability is with respect to products claims.

The CHA also purchased a second policy for the same period from Hartford Accident & Indemnity Company. The Hartford policy, which provides excess coverage to that of the Holland–America policy, is triggered when the Holland–America policy has been exhausted according to its terms. While the extent of coverage afforded by the Hartford policy is the central issue in this case, at a minimum the Hartford policy insures the excess of claims over $1,000,000 and the excess over the $1,000,000 aggregate for products claims.

This dispute over the coverage afforded by the Hartford policy arose when Holland–America became insolvent. Apparently, Holland–America made no payments pursuant to the policy. The CHA then assumed the administration and payment of the approximately 841 claims filed during the relevant period. None of these claims was a products claim. During the policy period, the CHA exhausted its $1,500,000 self-insured retention and paid an additional $3,148,110.12 for general and automobile liability claims on behalf of Holland–America.

The CHA then notified Hartford that its self-insured retention and the limits of the Holland–America policy were exhausted. In response, Hartford paid the CHA $344,945.83. When Hartford discovered that the CHA had not paid more than $1,000,000 on any single claim, it demanded that its payment be returned. When the CHA refused, Hartford filed this action seeking the return of its payment. The CHA counterclaimed for all payments it made in excess of its self-insured retention.

II.

We review de novo a district court's grant of summary judgment. Doe v. Allied–Signal, Inc., 925 F.2d 1007, 1008 (7th Cir.1991). Our task is to determine whether the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 159, 90 S.Ct. 1598, 1609,

---

1. For the sake of simplicity, this limited classification of claims will be referred to as "products claims."

26 L.Ed.2d 142 (1970). Further, we "must view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991) (citations omitted). Both parties agree that Illinois law applies.

The CHA admits that under ordinary circumstances, an excess insurer is not required to indemnify its insured for losses which otherwise would be covered by a primary insurer but for the latter's insolvency; this is known as "drop down" coverage. The CHA makes this concession because this court has repeatedly held that excess insurers are not required to provide "drop down" coverage absent clear language that provides this coverage. *See Hudson Ins. Co. v. Gelman Sciences, Inc.*, 921 F.2d 92 (7th Cir.1990) (applying Illinois law); *United States Fire Ins. Co. v. Charter Fin. Group, Inc.*, 851 F.2d 957 (7th Cir.1988) (applying Indiana law); *Zurich Ins. Co. v. The Heil Co.*, 815 F.2d 1122 (7th Cir.1987) (applying Wisconsin law). In addition, the Hartford policy explicitly disclaims "drop down" coverage for any reason, and the CHA admitted this at oral argument.[2] Notwithstanding the policy's disclaimer, the CHA argues that Hartford contracted to provide greater coverage to the CHA in the event of Holland–America's insolvency than Hartford would have had to provide if Holland–America had remained solvent.

█ The Hartford contract is entitled "Excess Liability Policy." The policy states:

> Except as otherwise provided by this policy, the insurance afforded herein shall follow all the terms, conditions, definitions and exclusions of the controlling underlying insurance policy designated in Item 6 of the declarations.[3]

This provision renders the Hartford policy a "following form" policy. As such, it insures the same risks covered by the underlying policy issued by Holland–America, but provides coverage to the insured in addition to and in excess of the coverage provided by the Holland–America policy. *See The Coleman Co., Inc. v. California Union Ins. Co.*, 960 F.2d 1529, 1530 n. 1 (10th Cir.1992) (describing "following form" policies). Accordingly, the interpretation of the extent of coverage afforded by the Hartford policy will be dictated by the terms of the Holland–America policy.

The CHA, however, disputes this method of interpretation and argues that a different provision in the Hartford policy alters the method of interpretation such that the Hartford policy should be read independently of the Holland–America policy. The Hartford policy includes provisions that require the CHA to maintain the underlying insurance as a condition of the policy and to notify Hartford if another primary carrier is substituted for Holland–America. These provisions, the CHA contends, indicate that Hartford expected that other insurers might be insuring the underlying risk; therefore, goes the argument, the Hartford policy should be read independently of the Holland–America policy.

This argument is unavailing. In those provisions on which the CHA relies, Hartford simply seeks to ensure that the underlying coverage will be maintained. Further, these provisions, in no uncertain terms, insulate Hartford from liability for any amount less than $1,000,000 per claim (except with respect to products claims), even if the CHA fails to maintain the required underlying insurance. Thus, the provisions on which the CHA relies do not bear on whether the Hartford policy is to be read independently, and the Hartford policy's plain language directs that its terms and conditions are to follow those of the Holland–America policy.

---

**2.** In its "Conditions" section, the contract provides:

> Policies affording in total the limits stated in Item 5 of the declarations shall be maintained in full effect during the currency of this policy, except for the reduction of any aggregate limits contained therein solely by payment of claims with respect to occurrences taking place during the period of this policy. Failure of the first named insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the company shall be liable only the extent that it would have been liable had the first named insured complied therewith.

> The first named insured is the CHA.

**3.** Item 6 of the declarations designates the Holland–America policy.

Keeping in mind that the Hartford policy "follows the form" of the Holland–America policy, we evaluate the coverage afforded by the Hartford policy. The Hartford policy states that "[t]he company will indemnify the insured for ultimate net loss in excess of underlying insurance stated in Item 5 of the declarations, but not in excess of the company's limits of liability stated in Item 4 of the declarations." Item 5, entitled "Total Limits of Liability—All underlying insurance policies," states: "$1,000,000 Each Occurrence and Aggregate Excess of $150,000 Occurrence and $1,500,000 Aggregate Combined Auto Liability and General Liability Self-insured Retention." In addition, Item 4 limits Hartford's total liability to $15,000,000 in a given year. Thus, Hartford is liable to pay the excess of any claim over $1,000,000, but not more than $15,000,000 in a given year. Consistent with the coverage scheme previously described, the only instance in which Hartford is liable to pay any claim for less than $1,000,000 is that instance in which a products claim is filed and Holland–America has already reached its aggregate limit of $1,000,000 for products claims.

The CHA argues that this interpretation of the coverage afforded by the policies is not at all correct and contends that the import of Item 5 of the declarations, the provision in which Hartford limits its liability, is that Hartford agreed to assume Holland–America's liability once the CHA has exhausted its liability. The CHA argues that Item 5 at least presents an ambiguity that precludes summary judgment. Further, the CHA urges that comparison of the respective limits of liability provisions in the Hartford and Holland–America policies supports its position.

We disagree. While it is true that the limits of liability provisions in the two policies differ slightly,[4] this slight difference does not impose a different meaning on the Hartford policy or even render its meaning ambiguous. At most, this difference might indicate that the corresponding provision of the Holland–America policy is drafted more precisely.

Remember, the Hartford policy is one that follows the form of the Holland–America policy and insures the same risks. The interpretation the CHA urges would create a significant difference between the coverage schemes of the two policies; a difference that could not have been intended by any of the parties.

It is important to note that this section, which the CHA claims enlarges the scope of the Hartford's liability, is entitled "Limits of Liability." The general rule is that clauses of limitation do not obligate insurers to pay. *Harnischfeger Corp. v. Harbor Ins. Co.*, 927 F.2d 974, 975 (7th Cir.1991); *Continental Casualty Co. v. Pittsburgh Corning Corp.*, 917 F.2d 297, 300 (7th Cir. 1990). There is nothing in this particular provision or in any other provision of the policy, for that matter, that indicates an exception to the general rule. Consistent with the Holland–America policy and the other provisions of the Hartford policy, this provision clearly limits Hartford's liability to that in excess of Holland–America's liability and does not increase Hartford's liability in any way.

Therefore, applying this plain meaning of the policies, Hartford is not liable to the CHA for any claims less than $1,000,000, unless there are products claims, or for any amount greater than $15,000,000. Here, there are no claims in excess of $1,000,000 and no products claims that might trigger liability for claims for less than $1,000,000. The result is that Hartford has incurred no liability pursuant to its contract with the CHA.

Having determined that Hartford has no liability pursuant to its policy, we must decide whether Hartford is entitled to recover the $344,945.83 it paid the CHA believing that the limits of the Holland–America policy were exhausted. In Illinois, the general rule is that an insurer can recover amounts paid under a mistake of fact, but not amounts paid under a mistake of law. *The Hartford v. Doubler*, 105 Ill.App.3d 999, 61

---

**4.** The Holland–America policy includes the limiting language "in the Aggregate where applicable excess ..." and the corresponding provision in the Hartford policy states "Aggregate Excess...."

Ill.Dec. 592, 594, 434 N.E.2d 1189, 1191 (1982) (citing *Groves v. Farmers State Bank*, 368 Ill. 35, 12 N.E.2d 618 (1938)). This court has noted, however, that in this context there is no bright line test between mistakes of law and mistakes of fact. *Harnischfeger Corp. v. Harbor Ins. Co.*, 927 F.2d 974, 977 (7th Cir. 1991) (interpreting a virtually identical Wisconsin rule). In that case, we opted instead to implement our "higher mental centers" in arriving at a solution in accord with an appropriate public policy. *Id.* Under either approach, Hartford is entitled to recover the amount of its payment to the CHA.

■ The record is clear in this case that the CHA represented to Hartford that payments had exceeded the limits of the underlying policy.[5] Hartford responded by making the requested payment. Under the Illinois test, this representation caused Hartford to make a mistake of fact: either that certain general claims exceeded $1,000,000 or that the aggregate of $1,000,000 had been exceeded for products claims.[6] When it discovered that its factual interpretation was incorrect (*i.e.* that no single claim exceeded $1,000,000 or was a products claim), it demanded its money back. Under Illinois law, this scenario represents a mistake of fact whereby Hartford is entitled to recover.

■ Moreover, this result is consistent with the *Harnischfeger* opinion, where we noted a strong public policy against "induc[ing] insurers to play coy when their clients ask for assistance." *Id.* at 977. That is, denying an insurer the recovery of a payment made erroneously will cause the insurer to resolve all doubts regarding payment against the insured, thus "compelling the insureds to pay up front and bring suit to recover." *Id.* Here, Hartford, in good faith, believed what the CHA told it and made the payment requested by the CHA. With all

due diligence, Hartford pursued the issue and, when it discovered that there was no liability, requested that its payment be returned. To deny Hartford its recovery would lead to the dangers warned against in *Harnischfeger*. Thus, in accord with the public policy articulated in that case, Hartford is entitled to recover from the CHA its payment of $344,945.83.

### III.

In this case, the plain meaning of the insurance policies is clear and not ambiguous. In addition, the record reveals no genuine issue of material fact. Therefore, because Hartford is entitled to judgment as a matter of law, the decision of the district court is AFFIRMED.

---

5. In its brief and at oral argument, Hartford directed the court to an affidavit of a CHA employee in the record in which the employee makes this representation. The CHA could not point to any evidence in the record to dispute this representation.

6. Incidentally, this highlights the point articulated in *Harnischfeger* that issues of law and fact cannot always be easily separated into distinct "bins." That the underlying policy limits had

been exhausted is a legal conclusion. Hartford, however, as any reasonable excess insurer would, assumed facts that would support this legal conclusion.

