**NEWMAN–GREEN, INC., Plaintiff,**

v.

**Alejandro ALFONZO–LARRAIN R., et al., Defendants.**

**No. 82 C 7933.**

United States District Court, N.D. Illinois, E.D.

April 12, 1990.

Phil C. Neal, Michael D. Sher, George M. Hoffman, Neal, Gerber & Eisenberg, Chicago, Ill., for plaintiff.

Ellen G. Robinson, C. Philip Curley, Kahn, Robinson, Curley & Clayton, Chicago, Ill., for defendant Bettison.

Frank K. Heap, Charles Alpert, Bell, Boyd & Lloyd, Chicago, Ill., for remaining defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This is the latest (and it is to be hoped the last) excursion into the arcane mysteries of federal jurisdiction in this action—excursions that have contributed to keeping this case in existence far longer than either the mean or median life of cases on this Court's individual calendar (let alone the total calendars that make up the caseload in this District Court). Now-dismissed defendant William Bettison, Jr. ("Bettison") seeks to invoke Fed.R.Civ.P. ("Rule") 60(b)(4) to recover the amount that he contributed toward the sum of $288,771.71 collected by Newman–Green, Inc. ("NGI") on May 12, 1987 on the partial summary judgment (the "Judgment") that this Court had awarded earlier on Count I of NGI's Complaint. For the reasons stated in this memorandum opinion and order, this Court denies both (1) Bettison's motion and (2) the additional relief that has now been sought by Bettison's former co-defendants (and still defendants in this action) Alejandro Alfonzo–Larrain, Irene Larrain de Caplan, Alberto Tudela and Rafael Tudela (collectively "Remaining Defendants").

### Procedural History

Though many of the other aspects of the checkered history of this litigation could also serve as suitable grist for the mill of a law school course in federal jurisdiction, this opinion will limit itself to retracing the steps relevant to the current motion. No factual dispute has been raised by the parties about those matters—and to the extent that they depend on representations made by the litigants in their current submissions (for example, the amount Bettison says he contributed to the single lump-sum payment made to NGI in satisfaction of the Judgment), this Court will accept such representations as true.

On June 26, 1985 this Court entered partial summary judgment on Count I, finding in favor of NGI and holding Bettison and Remaining Defendants (collectively "Guarantors") liable as a matter of law on one aspect of their written guaranty undertaking (612 F.Supp. 1434 (N.D.Ill.1985)).[1] Then after further proceedings had provided the necessary information as to the amount at issue in that one aspect, on December 17, 1986 this Court quantified Guarantors' Count I liability as aggregating $207,908.86 plus prejudgment interest. And on January 5, 1987 a supplement to the December 17 order was entered, including a Rule 54(b) determination that rendered the following judgment order final:

> NGI shall have judgment in its favor on Count I of its complaint against Alejandro Alfonzo–Larrain R., Irene Larrain de Caplan, Rafael Tudela, Alberto Tudela and William L. Bettison, jointly and severally, in the total amount of $279,936.46, representing the principal amount of $207,908.86 plus 5 percent per annum prejudgment interest on that principal amount from January 31, 1980 to the date of this judgment.

There was no appeal from that judgment, and NGI proceeded to initiate supplemental enforcement proceedings. After some brief but intensive procedural skirmishes, Guarantors succumbed. On May 12, 1987 their lawyers (who then represented Bettison as well as Remaining Defendants, and who continue to represent Remaining Defendants to this day) sent NGI's lawyers a single cashier's check (Ex. 1 to this opinion) together with a forwarding letter (Ex. 2 to this opinion) saying that the payment was "in satisfaction of the outstanding money judgment in the above referenced matter."

---

**1.** It was not then possible to quantify the amount of that liability.

Guarantors' attorneys also sent along a satisfaction of judgment form, reflecting that the judgment had been entered against Guarantors "jointly and severally." That satisfaction of judgment (Ex. 3 to this opinion) was signed by NGI's attorneys on NGI's behalf and was filed in this District Court May 19, 1987.

In contrast to that straightforward (albeit protracted) sequence of events, the other aspects of this litigation have followed an extraordinarily tortuous path. When other aspects of this Court's rulings (not the Count I money judgment) were taken up on appeal, the Court of Appeals identified a jurisdictional flaw that had escaped all the litigants and this Court as well: Bettison, who is a United States citizen but who was not alleged in the Complaint to be a citizen of any *state* (apparently he resides, as do Remaining Defendants, in Venezuela), was a diversity spoiler in subject matter jurisdictional terms. That problem occupied the Court of Appeals not only at the initial panel level (832 F.2d 417, 419–20 (7th Cir.1987)) but en banc (854 F.2d 916 (7th Cir.1988) and dissenting opinion, *id.* at 927), then found its way to the Supreme Court, which by a 7–to–2 vote reversed our Court of Appeals' en banc reversal of the panel decision (—— U.S. ——, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989)).

At the end of that line it was conclusively decided that the Court of Appeals had the power to dismiss out Bettison as a defendant and thus to preserve this Court's subject matter jurisdiction over the case. That was done in a one-paragraph order entered by the Court of Appeals on November 1, 1989, and on the same day that Court remanded the case here for further proceedings consistent with the original panel opinion, 832 F.2d at 420–22. What Bettison now contends is that he should recoup his contribution to the funds that made up the Ex. 1 cashier's check because that contribution was made when the jurisdictional flaw had not yet been cured.

### Jurisdiction To Determine Jurisdiction

As the just-completed historical outline reflects, this action has once before been

diverted from its merits into a jurisdictional bypass. To prevent a possible recurrence of that situation, this opinion first examines the issue of jurisdiction over the present motion—lest the already-remarked absence of diversity between Bettison and NGI might also be thought to impair this Court's ability to deal with Bettison's motion.

Two bases for such jurisdiction present themselves. Both are persuasive and may be dealt with quickly.

■ For one thing, because Bettison's motion is filed under Rule 60(b)(4) it is viewed as ancillary to NGI's original action. No independent jurisdictional basis is thus required. As *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 799 (7th Cir.1980) (citations omitted) put it in a somewhat different context:

These principles are controlling in this case. It is clear that a Rule 60(b) motion is considered ancillary to or a continuation of the original suit; the motion thus requires no independent jurisdictional ground.... If the district court had jurisdiction when the original suit was filed, it has jurisdiction to entertain a Rule 60(b) motion. This jurisdiction is not divested by subsequent events.

This case poses a variant on that situation, one in which jurisdiction over the action itself plainly exists now (with Bettison out of the lawsuit). There is no apparent reason to treat his Rule 60(b)(4) motion as any less ancillary to the underlying action.

■ It is equally well established that a challenge to the continuing validity of a federal judgment, made by a motion seeking relief from that judgment, poses a federal question (see, e.g., *Villarreal v. Brown Express, Inc.*, 529 F.2d 1219, 1221 (5th Cir.1976) (per curiam)). That being so, any absence of diversity of citizenship is wholly irrelevant.

Either of those grounds suffices to confirm subject matter jurisdiction over the current motion. Bettison's lack of the requisite diverse citizenship, though it must now be viewed as fatal to the original judgment *as against him*, does not taint his current motion.[2]

2. This case is of course a graphic demonstration    of the principle that neither waiver nor over-

*Bettison's Rights (or Lack of Them)*

■ At its core Bettison's motion rests on the premise that the Judgment (though it ran against all Guarantors and not against Bettison alone) was void for lack of subject matter jurisdiction—and that being so, he says, anything that followed upon the Judgment was equally tainted. To that end Bettison cites to *Watts v. Pinckney*, 752 F.2d 406 (9th Cir.1985), in which the Court of Appeals for the Ninth Circuit granted relief under Rule 60(b)(4), finding that the judgment involved there was void and therefore ordering restitution of the amount previously paid by the judgment debtor in satisfaction of that nullity.

But in this instance Bettison's underlying premise is totally false. Unlike *Watts* (where the judgment itself was void [3]), the judgment in this case was void *only* as against Bettison. Unless no real effect is to be given to the decision of the Supreme Court and to the later action of our Court of Appeals in dismissing Bettison and thus implementing the Supreme Court's decision, the case against Remaining Defendants must be treated as *always* having been within federal jurisdiction by reason of the dismissal of stream-polluting defendant Bettison—not as having been a nullity from the outset and a continuing nullity running through the time of the Judgment and thereafter, only to be raised from the

dead like Lazarus when Bettison was ultimately dismissed.

That conclusion necessarily follows from the Supreme Court decision and the foundation on which it rested. As did the dissenting opinion in our Court of Appeals (authored by Judge Easterbrook, joined by Judges Flaum and Kanne), the Supreme Court pointed to *Carneal v. Banks*, 23 U.S. (10 Wheat.) 181, 187–88, 6 L.Ed. 297 (1825) and *Horn v. Lockhart*, 84 U.S. (17 Wall.) 570, 579, 21 L.Ed. 657 (1873) as precedential authority—see, in the Supreme Court, 109 S.Ct. at 2224 and, in Judge Easterbrook's dissent, 854 F.2d at 930–31. In those two seminal Supreme Court cases the dismissal of dispensable nondiverse parties had been viewed as totally curative—so that the dismissals accomplished what Judge Easterbrook described at 854 F.2d at 930 in citing those early cases:

> Long before [*Mansfield, Coldwater & Lake Michigan Ry. v.*] *Swan*, [111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884) ] the Court held that a district judge may dismiss a dispensable, non-diverse party and get on with the case—presumably "retroactively" validating any acts that had occurred before the dismissal.

To be sure, the Supreme Court relied on Rule 21 alone (rather than both Rule 21 and 28 U.S.C. § 1653, as did Judge Easterbrook) as the source of power for an appellate court's dismissal of the jurisdiction-tainting litigant.[4] But the necessary impli-

---

sight nor anything else eliminates considerations of subject matter jurisdiction from a case. Nonetheless it may be noted that both Bettison and NGI have cited authority in support of this Court's jurisdiction to treat with Bettison's motion, while Remaining Defendants' memorandum simply does not discuss the jurisdictional issue.

**3.** In *Watts* a judgment was entered in favor of plaintiffs ("Watts") against both the United States and an individual defendant ("Pinckney"). Pinckney paid the judgment against him in full without appealing, but the United States appealed both (1) the Watts judgment that ran against it and (2) the corresponding judgment that Pinckney had contemporaneously obtained in his third-party complaint against the government. At that point the Court of Appeals held that Watts' remedy was solely against the United States (*mem. ops.* 696 F.2d 1003, 696 F.2d 1005 (9th Cir.1982)). Then the District Court on remand found that it lacked summary jurisdiction over Watts' claim against the United States be-

cause of Watts' failure to comply with the relevant statutory requirements, so the District Court dismissed the complaint against the United States on subject matter jurisdictional grounds. By definition that left only the already-satisfied judgment against Pinckney—and because of the Court of Appeals' decision that was itself (also by definition) void. Bettison's current presentation of *Watts* (in his Mem. 2–4) is wholly misleading, because it downplays entirely the critical fact that the District Court's lack of subject matter jurisdiction over the United States had left only a one-plaintiff-one-defendant judgment, which was then subject to successful attack by *that* defendant on jurisdictional grounds (the classic example of a truly void judgment).

**4.** That difference in treatment of course has no significance for purposes of the current discussion. What is relevant to the present analysis is not the fount of power to dismiss the party whose presence poses the jurisdictional problem, but rather the significance of that dismissal

cation of what the Supreme Court did in reversing our Court of Appeals' en banc majority, as well as the plain thrust of the Supreme Court's language, was to lend approbation to Judge Easterbrook's repeated references to the effect of such a decision as involving a retroactive creation of jurisdiction (as to the latter, see 854 F.2d at 930–37). No other reading may fairly be given to the manner in which the Supreme Court described the consequences of the rejected alternative of outright dismissal of the entire case—an alternative that Remaining Defendants had urged upon the Supreme Court and that the Supreme Court expressly spurned (see 109 S.Ct. at 2225–26).

With the claimed *Watts* underpinning for his position thus removed, Bettison's entire superstructure collapses entirely. What we have in the Judgment is a *valid* judgment against Remaining Defendants, satisfied by a lump-sum payment by Guarantors to which Bettison contributed. And that contribution was obviously the product of a mistaken perception of the law (one then shared by all the other litigants and this Court) that Bettison too was jointly and severally liable for the entire amount of the Judgment. If Bettison had been more perceptive or prescient, he could have raised the issue before this Court[5]—but having failed to do so, he cannot now inflict on NGI the cost of his own mistake of law in pitching in toward payment of the Judgment. Bettison contributed to a total fund that was tendered to NGI as a unitary payment by the Bell, Boyd & Lloyd law firm (then representing all Guarantors). There were no direct negotiations between NGI and Bettison and no separate payment by him, and those things alone would appear to pose problems for Bettison's current effort to carve out a portion of what

was paid over in the form of an indivisible cashier's check.

But even apart from that roadblock to recovery, Bettison's payment was at best made under a mistake of law and cannot be recouped for that reason (there are a number of Illinois cases standing for that proposition, but the leading case remains *Groves v. Farmers State Bank of Woodlawn*, 368 Ill. 35, 12 N.E.2d 618 (1938)). Bettison Mem. 2 and Remaining Defendants Mem. 4 urge that the just-stated doctrine that payments made under a mistake of law are not subject to recapture "applies only to voluntary payments" or payments not "made under compulsion." That much is true, but what both Bettison and Remaining Defendants have failed to acknowledge is that those terms "voluntary" and "compulsion" are entirely matters of definition and that the controlling Illinois authority, *Groves*, 368 Ill. at 47, 12 N.E.2d at 624 squarely held that a payment made under the pressure of an outstanding judgment (even though that judgment was erroneous) was *not* made under compulsion and was indeed *voluntary*—so that the payment was thus held nonrecoverable precisely because it had been "paid under a mistake of law."

In sum, then, NGI had initially obtained a valid judgment entered by a court that—given the teaching of the Supreme Court—did have subject matter jurisdiction (though that result came about by reason of later validation). Bettison voluntarily kicked into the payment of that judgment as the result of discussions with his fellow defendants in which NGI had no voice. NGI received a single payment of the Judgment without any indication of the source and amount of the respective contributions. If Bettison wants relief from his voluntary

---

for the existence of the case itself. And on that score both this case and its historical antecedents are uniform in their approach: By keeping the case alive rather than dismissing it as a whole, all the decisions necessarily treat the case itself as though it had been viable *before* the dismissal of the jurisdiction-offending defendant—even though that viability stems from a later-occurring event.

**5.** This Court did not catch the issue on its own, as it presumably should have done (in the

course of his dissent Judge Easterbrook said "the defect here was so esoteric that even Judge Shadur, a jurisdiction-hound, did not catch it" (854 F.2d at 940)). But it is morally certain that the identification of the potential flaw by *any* litigant at any time, drawing this Court's attention to a problem it likely should have caught, would have resulted in Bettison's swift dismissal and thus changed the entire course of the litigation.

but mistaken participation, he must look to the other defendants and *not* to NGI. Bettison's motion must be and is denied.

### Remaining Defendants' Prayer for Injustice

■ Because Remaining Defendants' current claim is wholly derivative, Bettison's failure also spells automatic defeat for Remaining Defendants. But against the possibility that an appellate court might differ with this Court's view of Bettison's motion—and at least as importantly because of the extraordinary outrageousness of what Remaining Defendants' counsel urge as a collateral result of victory for Bettison if he should achieve it—some separate treatment of Remaining Defendants' submission is in order.

That submission really has to be read to be believed. It is succinctly summarized at Remaining Defendants Mem. 1, where the proposed additional consequences of Bettison's attempted recoupment are stated this way:

> Based upon well established federal and Illinois law, defendants submit that the judgment entered on Count I of the Second Amended Complaint should be vacated, that Mr. Bettison should recover from plaintiff Newman–Green, Inc. ("NGI") his pro rata share of the amount paid on the judgment entered thereon, and that NGI should recover no part thereof from the defendants. In addition, the restitution made by NGI should include all postjudgment interest paid by the defendants and an amount to cover applicable Venezuelan taxes.

For that extraordinary outcome, in which NGI would be stripped not only of the amount contributed by Bettison to the previously-satisfied Judgment but also of any ability to recover that amount from the jointly and severally liable Remaining Defendants, those Remaining Defendants point to the post-remand with-prejudice dismissal of Bettison by our Court of Appeals. In response to this Court's inquiry made after it had received that startling propos-

al, Remaining Defendants' counsel have tendered the September 24, *1987* motion that NGI submitted to the Court of Appeals asking dismissal of Bettison to preserve subject matter jurisdiction (Ex. 4 to this opinion),[6] then the parties' respective September 1, *1989* submissions to the Court of Appeals in response to that court's post-remand August 21, 1989 direction (Exs. 5 and 6 to this opinion), followed by the Court of Appeals' November 1, 1989 one-paragraph order dismissing Bettison with prejudice. Then, say Remaining Defendants to this Court and to NGI (their Mem. 5, emphasis added):

> Because the judgment paid by defendants and Mr. Bettison was void, NGI must be required to make restitution of the entire sum and should not be allowed to recover subsequently for the amount of the judgment reflecting postjudgment interest. In addition, if and when this Court reenters judgment under Count I, the amount of that judgment must be reduced by Mr. Bettison's *pro rata* share because NGI has released all its claims against Mr. Bettison.

Even if that accurately represented the law, it is fair to state that there is no court in the land that would not relieve NGI of the harsh and inequitable result of relieving Remaining Defendants of legal responsibility for 20% of their adjudicated and substantively undisputed liability. For one thing, it appears on its face to have all the characteristics of a sneak play—as to which some explanation is in order.

NGI's 1987 motion to dismiss Bettison was simply that—it was not necessary to the preservation of federal jurisdiction that such dismissal be *with prejudice*, only that Bettison be dropped from the lawsuit. Nor did NGI's brief supplement to its 1987 motion ask for a with-prejudice dismissal—it simply said that Bettison "as one of five joint and several co-obligors" was not an indispensable party, so that "he may be freely dropped as a party in order to preserve federal subject matter jurisdiction."

---

6. That motion was made after the initial oral argument before the Court of Appeals panel, when the absence of diversity jurisdiction was first raised—long before the tortuous history of the panel decision, the en banc reversal, the Supreme Court reversal of the en banc opinion and the remand to the Court of Appeals.

Nor, finally, did NGI's September 1, 1989 statement in response to the Court of Appeals' August 21 request say a word on the subject other than this:

> The opinion of the Supreme Court endorsed the panel's conclusions (1) that this court had power to grant plaintiff's motion to dismiss the nondiverse defendant, thereby perfecting the jurisdiction of this court over the case, and (2) that that power was correctly exercised on the facts of this case, without any need for a remand to permit the district court to pass on such a motion in the first instance. The Supreme Court's reversal thus extends to the only grounds given by the *en banc* opinion for vacating the panel decision.

Instead it was the panel's initial opinion in the Court of Appeals that introduced the notion of a dismissal with prejudice (832 F.2d at 420 (citations omitted, emphasis added)):

> A court ought not allow a dismissal that injures adverse parties unduly, compared with the position the plaintiff could have achieved by suing the right parties in the first place. *The guarantors other than Bettison* may be injured in fact by Bettison's dismissal: they *must pay the $200,000 (plus interest) for the pre-November 1979 sales without Bettison's help,* and they are exposed to liability for other sales. We gather from NGI's representations at oral argument that Bettison has property in the United States on which NGI may have planned to levy. This is not, however, the sense of prejudice that matters. The guarantors are jointly and severally liable, so none is an indispensable party under Fed.R.Civ.P. 19(b).... *NGI could have sued only the four Venezuelan guarantors in the first place, putting them in the same position they will occupy once NGI dismisses Bettison.* Bettison's presence in the district court did not affect the conduct of the litigation.

The only apparent prejudice is to Bettison, who has participated in this litigation and faces the prospect of a second suit in state court. Had NGI filed this case in the courts of Illinois or Venezuela, or sued Bettison in one court while pursuing the Venezuelan guarantors in another, his liability would have been finally determined in a single litigation. NGI's carelessness about federal jurisdiction is responsible for this problem, so although we grant NGI's motion to dismiss Bettison, we dismiss him with prejudice. *The other guarantors may pursue Bettison to obtain contribution or indemnity, if they are entitled to any.*

And it will be remembered that the Court of Appeals said that in the context of an unappealed judgment (unappealed even by Bettison) for the more than $200,000 referred to in the quoted language.[7] What the panel ordered there was ultimately specifically approved by the Supreme Court, employing virtually the same language about Remaining Defendants having to seek contribution or indemnity from Bettison once he was dismissed from the lawsuit (109 S.Ct. at 2226):

> Second, given that all of the guarantors (including Bettison) are jointly and severally liable, it cannot be argued that Bettison was indispensable to the suit. Fed. Rule Civ.Proc. 19(b); see 854 F.2d, at 938 (Easterbrook, J., dissenting). The only person who faces any prejudice is Bettison himself, who has participated in this litigation from the start, and who would face the possibility of suit in a state or Venezuelan court. The panel solved this problem by terminating the litigation against Bettison with prejudice, thus leaving the other guarantors with the burden of pursuing Bettison to obtain contribution or indemnity. 832 F.2d at 420. The panel's disposition was entirely appropriate. Nothing but a waste of time and resources would be engendered

---

**7.** That, together with interest, is what made up the more than $288,000 paid in satisfaction of the judgment. It is clear from the just-quoted portion of the panel's opinion (issued October 28, 1987 after the September 14, 1987 oral argument) that no one had told the Court of Appeals judges that the unappealed judgment had already been satisfied in May 1987—for the opinion spoke in terms of what the "guarantors other than Bettison ... must pay" (a forward-looking expression).

by remanding to the District Court or by forcing these parties to begin anew.

It was Remaining Defendants' (and not NGI's) September 1, 1989 post-remand submission to the Court of Appeals that referred to the proposed "with prejudice" dismissal of Bettison—in each of the three numbered paragraphs of Remaining Defendants' submission. Yet not a word was said in Remaining Defendants' "Reasons for the Actions Suggested" (the substantive part of their September 1 submission) as to their current strategy, although that same submission to the Court of Appeals specifically projected the current move by Bettison (whom, it will be recalled, the same lawyers had also represented throughout his prior involvement in this litigation):

> Accordingly, defendants-appellees submit that the case should be remanded to Judge Shadur to consider whether the case should proceed against the remaining guarantors after the dismissal of Mr. Bettison. At that time, Mr. Bettison also intends to move that all payments made by him in satisfaction of the partial summary judgment be returned to him.[8]

So it is flat-out misleading for Remaining Defendants' counsel to ascribe the with-prejudice aspect of the Bettison dismissal to NGI, as they do in their current Mem. 6 to this Court:

> By dismissing with prejudice its claim against Mr. Bettison, NGI has released him from his liability under the guaranty. *See, e.g., Luke v. Signal Oil & Gas Co.,* 523 F.2d 1190, 1191 (5th Cir.1975) (a dismissal with prejudice of a claim has the "force and effect of a full release"). With the release of Mr. Bettison, the remaining guarantors are released to the extent of one-fifth of the guaranteed amount, and any judgment entered against the defendants on Count I must be correspondingly reduced.[9]

---

**8.** [Footnote by this Court] Full disclosure would certainly appear to have called for counsel for Remaining Defendants to tell the Court of Appeals that *they* intended to seek relief from any responsibility if Bettison were successful in that motion. As the language quoted earlier from the panel opinion says in so many words, that court specifically contemplated that the consequence of a with-prejudice dismissal of Bettison would be that the Remaining Defendants would have to pay the entire amount of the original judgment "without Bettison's help," after which they "may pursue Bettison to obtain contribution or indemnity, if they are entitled to any." If Remaining Defendants' counsel had made full disclosure as their lawyers' obligation of candor to the tribunal required, NGI would have had the opportunity to oppose any argument for a with-prejudice dismissal that would carry with it any collateral effect on the already-paid judgment—and at least as importantly the Court of Appeals would have had the opportunity to consider such a result that would defeat its expressed expectations. But as the next footnote also reflects, full disclosure is clearly not the strong point of Remaining Defendants' counsel.

**9.** [Footnote by this Court] Even in what they have argued in that respect, Remaining Defendants' counsel have been less than open with this Court. *Luke* does indeed hold that the defendants there were discharged pro tanto—but that per curiam opinion dealt with (1) joint tortfeasors (and not joint and several guarantors) (2) under the special principles of Louisiana law (and not the law of Illinois) (3) applicable to a voluntary contractual release (and not the type of court-ordered dismissal involved here). Only a few minutes' research by this Court has sufficed to demonstrate that in Illinois "[t]he question as to which persons are released by a release depends on the intention of the parties as gathered from a proper construction of the instrument" (31 I.L.P. *Releases* § 23), only "[a] plain, absolute, unconditional, and ambiguous release of a joint debtor operates in law to release his co-obligor" (*id.* § 24) and the corresponding rule against joint tortfeasors (*id.* § 25) was much more strict ("appl[ying] irrespective of the intent of the parties" (*id.* at 350)) until it was changed by the Uniform Contribution Among Tortfeasors Act (see *Alsup v. Firestone Tire & Rubber Co.,* 101 Ill.2d 196, 77 Ill.Dec. 738, 461 N.E.2d 361 (1984) and *Trexler v. Chrysler Corp.,* 104 Ill.2d 26, 83 Ill.Dec. 342, 470 N.E.2d 300 (1984)). On a whole congeries of grounds, then, the only authority cited by Remaining Defendants' counsel for the proposition they assert here was, if understatement were the order of the day, entirely suspect. Under the circumstances it might well be wondered just why Remaining Defendants' counsel chose to turn to that single Louisiana-based decision as their source of "authority." Perhaps even they did not have the nerve to urge that their clients had been released *entirely* by Bettison's dismissal from the lawsuit (as would have been the result under Illinois law if the doctrine they now advance were indeed to be found applicable here). But such speculation is really beside the mark—once again what matters is that this Court was entitled to but did not receive a reliable exposition of the law from Remaining Defendants' counsel.

And it is also worth observing in that respect that Remaining Defendants' memorandum to this Court was not accompanied by the documents now comprising Exs. 4, 5 and 6 to this opinion—it was only upon this Court's inquiry to the lawyers as to what was meant by "release" in the just-quoted statement [10] that Remaining Defendants' counsel furnished the documents that have disclosed the facts set out here.

What is now sought by Remaining Defendants is bankrupt both equitably and legally. It would take away from NGI an amount to which it has been formally adjudicated to be entitled, an amount never thereafter challenged by Remaining Defendants as representing NGI's just due—and it would provide Remaining Defendants with a corresponding undeserved and unanticipated windfall. It must again be recalled that only NGI was an appellant before the Court of Appeals—it was successfully seeking reversal of the aspects of this Court's ruling adverse to it and in favor of Guarantors. *That* claim—NGI's *remaining* joint and several claim against Guarantors, and not its already-satisfied Judgment—was what it then moved to dismiss solely against Bettison. When the Court of Appeals panel then determined in the first instance that such dismissal should be with prejudice, it expressly contemplated and expressly said that Remaining Defendants would still be jointly and severally liable for the entire amount of the Judgment that was not up for review (a judgment that the Court of Appeals was unaware had already been paid, as well as its not having been appealed). Either as a matter of construction—of any fair reading—of the Bettison dismissal or as a matter of relief from the egregiously unfair result now urged by Remaining Defendants, the "release" of Bettison cannot be given the effect they claim.

This opinion has consistently adverted to Remaining Defendants' counsel as well as to the litigants themselves. That has not been accidental. In a related area of the law, Rule 11 has come in for more than its share of criticism, some well-founded and some not. But one constructive result of the objective good-faith standard now embodied in that Rule might well be seen as a formalization (in a way not unlike the enactment of the criminal law) of standards that define antisocial conduct—but as with the criminal law, those are most typically standards with which people ought to comply even in the absence of such formalization. This Court's former colleague, Judge Susan Getzendanner, used to refer to the "straight face test" as one that every lawyer ought to adhere to with or without the compulsion of Rule 11: Never make an argument you cannot advance with a straight face.

Counsel for Remaining Defendants clearly fail that test. They are indeed spared potential exposure to the most frequently imposed Rule 11 sanction—that of fee-shifting—by the fact that this Court has not required any of the parties to respond to the initial memorandum filed by any other. That being true, NGI has not been subjected to the expense of any lawyers' fees in order to answer Remaining Defendants' contentions dealt with in this opinion. But it is this Court's candid opinion that no self-respecting lawyer could or should present the arguments that have now been submitted by counsel for Remaining Defendants—whether of their own devising or at their clients' behest. Those arguments fly directly in the face of the Court of Appeals' express intention, which could not have been more plainly stated. And in other respects those arguments simply misstate the law (see n. 9).

Moreover, any "release" of Bettison that would have as its fall-out consequence a corresponding windfall to Remaining Defendants, a consequence undisclosed by their counsel to the Court of Appeals that ordered Bettison's dismissal with prejudice, would necessarily have to be perceived as having taken place under a mistake of law equivalent to that of Bettison in making his voluntary contribution to the satisfaction of the Judgment. If Bettison were indeed

---

**10.** At that point this Court had been furnished only the May 12, 1987 satisfaction of judgment piece that had been prepared by the counsel who were then representing *all* Guarantors—the selfsame lawyers who are at the vortex of Remaining Defendants' current effort to escape liability.

found entitled to any part of relief contrary to the ruling earlier in this opinion, it would be a travesty of justice if NGI were also deprived of any part of its adjudicated entitlement from which Remaining Defendants never chose to appeal.

Advocacy has its proper place, and that of course can and should include a lawyer's advancement of any contention that can be made in good conscience. It is not the place of any court to chill responsible advocacy. But professionalism has its proper place as well. In this Court's view, Remaining Defendants' counsel have breached even the most forgiving standard.[11]

All that however is an unfortunate sideshow to the main event. In substantive terms, if this Court's determination as to Bettison were not to prevail, it remains this Court's view that Remaining Defendants are not entitled to any part of the relief they seek.

### Conclusion

Both motions for relief from the Judgment and for restitution are denied. This action remains pending as to the other matters that are the subject of the remand from the Court of Appeals, all of which will be dealt with at the next status hearing.

EXHIBIT 1

**FIRST CHICAGO**
The First National Bank of Chicago

PB-863006

MAY 12 1987            $\frac{2 \cdot 1}{710}$

PAY TO
THE ORDER OF____ NEWMAN-GREEN, INC._____

NAT'L BANK OF CHICAGO $288,771 and 71 cts

CASHIER'S CHECK

⑬⑬⑬

⑾008863006⑾ ⑾071000013⑾ 16 004619⑾

11. It is distressing to recall that much earlier in this litigation, after the Judgment had become final and NGI then proceeded with its collection efforts, the same counsel sought to interpose what then appeared to be some questionable obstructions to NGI's ability to recover on the Judgment in the first instance. Again this Court does not know whether those efforts originated with the clients or were the lawyers' own idea, but it really should not matter.

EXHIBIT 2

# BELL, BOYD & LLOYD
### A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

THREE FIRST NATIONAL PLAZA, SUITE 3200
70 WEST MADISON STREET
CHICAGO, ILLINOIS 60602
TELEPHONE (312) 372-1121
TWX/TELEX (910) 221-1220

OAK BROOK OFFICE
2001 SPRING ROAD
OAK BROOK, ILLINOIS 60521
TELEPHONE (312) 573-1900

WASHINGTON OFFICE
1615 L STREET, N W
WASHINGTON, D C, 20036
TELEPHONE (202) 466-6300

May 12, 1987

George M. Hoffman
Neal, Gerber & Eisenberg
208 South LaSalle Street
Chicago, Illinois   60604

Re:  <u>Newman-Green, Inc. v. Alfonzo-Larrain, et al.</u>

Dear George:

Enclosed is a cashier's check in the amount of
$288,771.71 in satisfaction of the outstanding money judg-
ment in the above referenced matter.  I have also enclosed
a satisfaction of judgment which you should execute and have
filed.

If you have any questions or problems, please contact
me.

Very truly yours,

Charles G. Albert

CGA/mak
Enclosure

cc:  Rowe W. Snider, Esq.
     Robert G. Epsteen, Esq.

EXHIBIT 3

IN THE UNITED STATES
DISTRICT COURT

FOR THE NORTHERN DISTRICT
OF ILLINOIS

EASTERN DIVISION

NEWMAN–GREEN, INC., et
al., Plaintiffs,

v.

ALEJANDRO ALFONZO–LARRAIN, R.,
et al., Defendants.

No. 82 C 7933

SATISFACTION OF JUDGMENT

Honorable Milton I. Shadur

WHEREAS, on January 5, 1987, a judgment was entered in favor of the plaintiff, Newman–Green, Inc., against the defendants, Alejandro Alfonzo–Larrain, Irene Larrain de Caplan, Rafael Tudela, Alberto Tudela and William L. Bettison, jointly and severally in the total amount of $279,936.46, representing the principal amount of $207,908.86 plus 5% per annum pre-judgment interest on that amount from January 31, 1980 to January 5, 1987; and

WHEREAS, said judgment, including post-judgment interest in the amount of $8,835.25, has been paid by defendants;

THEREFORE, satisfaction of the judgment is hereby acknowledged and the Clerk of the Court is hereby authorized and directed to cancel and discharge the same.

Dated this 12th day of May 1987.

NEWMAN–GREEN, INC.
By /s/ Michael D. Sher
Michael D. Sher
George M. Hoffman
Attorneys for Plaintiff

*Of Counsel*

Neal, Gerber & Eisenberg

208 South LaSalle Street
Chicago, Illinois 60604

EXHIBIT 4

IN THE UNITED STATES COURT
OF APPEALS

FOR THE SEVENTH CIRCUIT

CHICAGO, ILLINOIS

NEWMAN–GREEN, INC., an Illinois corporation, Plaintiff–Appellant,

v.

ALEJANDRO ALFONZO–LARRAIN, R.,
et al., Defendants–Appellees.

Cause No. 87–1195

APPELLANT'S MOTION FOR LEAVE TO AMEND AND TO DISMISS DEFENDANT–APPELLEE WILLIAM L. BETTISON

Plaintiff–Appellant, Newman–Green, Inc. ("NGI"), by its attorneys, respectfully moves this Court, pursuant to Federal Rule of Appellate Procedure 27, 28 U.S.C. § 1653, and in accordance with Federal Rules of Civil Procedure 15, 21 and 41, for leave to amend its Amended Complaint and to drop or dismiss Defendant–Appellee William L. Bettison as a party to this suit in order to preserve the Court's subject matter jurisdiction. Pursuant to the direction of the Court at oral argument, and in support of this motion, NGI submits herewith its Supplemental Brief on Subject Matter Jurisdiction.

Respectfully submitted,
NEWMAN–GREEN, INC.
By: /s/ Rowe W. Snider
One of its Attorneys

Rowe W. Snider

Monica S. Smyth

Lord, Bissell & Brook

115 South LaSalle Street

Chicago, Illinois 60603

312/443–0667 (R.W. Snider)

EXHIBIT 5

IN THE UNITED STATES COURT OF
APPEALS FOR THE
SEVENTH CIRCUIT

No. 87–1195

NEWMAN–GREEN, INC.,
Plaintiff–Appellant,

v.

ALEJANDRO ALFONZO–LARRAIN R.,
et al., Defendants–Appellees.

Appeal from the United States District
Court for the Northern District of Illinois, Eastern Division No. 82 C 7933
Judge Milton I. Shadur

STATEMENT OF NEWMAN–GREEN,
INC. PURSUANT TO
CIRCUIT RULE 54

Plaintiff-appellant, Newman–Green, Inc. ("NGI"), by its attorneys, pursuant to this court's Order, dated August 21, 1989, for its statement of position pursuant to Circuit Rule 54, states as follows:

1. On October 28, 1987, a panel of this court rendered an opinion in this case. 832 F.2d 417. This court vacated the panel opinion, 838 F.2d 968 (1988), and, on rehearing *en banc*, issued a new opinion. 854 F.2d 916 (1988). On June 12, 1989, the United States Supreme Court reversed this court's *en banc* decision and remanded the case for proceedings consistent with the Supreme Court's opinion. *Newman–Green, Inc. v. Alfonzo–Larrain, R.,* —— U.S. ——, 109 S.Ct. 2218, 104 L.Ed.2d 893.

2. The opinion of the Supreme Court endorsed the panel's conclusions (1) that this court had power to grant plaintiff's motion to dismiss the nondiverse defendant, thereby perfecting the jurisdiction of this court over the case, and (2) that that power was correctly exercised on the facts of this case, without any need for a remand to permit the district court to pass on such a motion in the first instance. The Supreme Court's reversal thus extends to the only grounds given by the *en banc* opinion for vacating the panel decision.

Accordingly, NGI submits that this court should reinstate the opinion and decision of the panel.

Respectfully submitted,
/s/Rowe W. Snider
One of the Attorneys for
Plaintiff–Appellant

Rowe W. Snider

LORD, BISSELL & BROOK

115 South LaSalle, 35th Floor

Chicago, IL 60603

(312) 443–0700

OF COUNSEL:

Phil C. Neal

Michael D. Sher

George M. Hoffman

NEAL GERBER EISENBERG & LURIE

208 South LaSalle, Suite 900

Chicago, IL 60604

(312) 269–8000

Dated: September 1, 1989

EXHIBIT 6

IN THE UNITED STATES COURT OF
APPEALS FOR THE
SEVENTH CIRCUIT

No. 87–1195

NEWMAN–GREEN, INC., an Illinois
corporation, Plaintiff–Appellant,

v.

ALEJANDRO ALFONZO–LARRAIN, R.,
et al., Defendants–Appellees.

Appeal from the United States District
Court for the Northern District of Illinois, Eastern Division No. 82 C 7933—
Milton I. Shadur, Judge Presiding.

CIRCUIT RULE 54 STATEMENT OF
DEFENDANTS–APPELLEES

Pursuant to Circuit Rule 54, defendants-appellees Alejandro Alfonzo–Larrain R., Irene Larrain de Caplan, Alberto Tudela, Rafael Tudela and William L. Bettison, as their position on the action which this Court should take on remand, respectfully submit that the Court should act as follows:

1. Remand the case to the district court with directions to dismiss Mr. Bettison with

prejudice, and thereafter to consider whether this case should proceed against the remaining defendants-appellees in any form in federal court; or

2. If this Court decides to determine on its own whether the case should proceed after Mr. Bettison is dismissed with prejudice, then the Court should consider, *en banc*, whether the remaining defendants-appellees will be unduly prejudiced if the entire case is not dismissed; and

3. If this Court decides to enter a decision on the merits of the case after the dismissal of Mr. Bettison with prejudice, then the Court should consider, *en banc*, whether the original panel misapprehended the facts and the applicable law in its decision.

## I.

### STATEMENT OF THE CASE

Newman–Green, Inc. ("Newman–Green") brought this action in 1982 to recover under a guaranty entered into by Alejandro–Alfonzo Larrain, Irene Larrain de Caplan, Rafael Tudela, Alberto Tudela and William L. Bettison (hereinafter jointly referred to as "guarantors"). The purpose of the agreement, as stated, was to guarantee only the payment of an amount up to the 5 percent royalty set forth in, and only for the period of time specified by, a license agreement between Newman–Green and a Venezuelan company, Newman–Green de Venezuela ("NGV"), for the sale of aerosol valves.

A panel of this Court reversed a district court judgment which had dismissed the guarantors from the suit. The panel construed Illinois common law to make the guarantors liable for royalty payments for as long as Newman–Green's technology was used. 832 F.2d 417, 422 (1987). The panel reached its decision, however, only after Mr. Bettison, a nondiverse party, was dismissed from the case. 832 F.2d at 419. Guarantors petitioned for a rehearing *en banc*. The Seventh Circuit granted the petition and vacated the panel's decision. 838 F.2d 968 (1987). On rehearing *en banc*, the Court held that it had no power to dismiss Mr. Bettison and ordered the case remanded to the district court for further consideration of whether the suit could proceed in any fashion in the federal courts. 854 F.2d 916 (1988).

The United States Supreme Court granted Newman–Green's petition for a writ of certiorari, —— U.S. ——, 109 S.Ct. 781, 102 L.Ed.2d 773, and subsequently reversed the Court of Appeals, holding that "a court of appeals may grant a motion to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction." —— U.S. ——, 109 S.Ct. 2218, 2220, 104 L.Ed.2d 893 (1988). The case was remanded to this Court on August 11, 1989 for further proceedings.

## II.

### REASONS FOR THE ACTIONS SUGGESTED

#### A.

*The District Court Should Consider Whether This Case Should Proceed Against The Remaining Guarantors*

This Court, sitting *en banc*, found that "the district court is better placed than the court of appeals to determine whether any party was harmed by the presence of the part that destroyed jurisdiction." 854 F.2d at 924. Indeed, the Supreme Court itself endorsed this general notion. 109 S.Ct. at 2226. ("If factual disputes arise, it might be appropriate to remand the case to the district court, which would be in a better position to make the prejudice determination"). Because of the protracted nature of this litigation, Judge Shadur has become intimately familiar with the ways in which Mr. Bettison's presence has affected the conduct of this litigation. Accordingly, defendants-appellees submit that the case should be remanded to Judge Shadur to consider whether the case should proceed against the remaining guarantors after the dismissal of Mr. Bettison. At that time, Mr. Bettison also intends to move that all payments made by him in satisfaction of the partial summary judgment be returned to him.

Admittedly, the Supreme Court's decision contains strong language which suggests

that the district court should not be given that opportunity in this case. 109 S.Ct. at 2226. That language is dictum, however, because it goes beyond the narrow issues framed by the petition for a writ of certiorari.[1] Because of the narrow scope of the matter that was presented by the certiorari petition, guarantors did not even address the reasons why merely dismissing Mr. Bettison will result in undue prejudice to the remaining guarantors. Accordingly, this Court is not bound to retain jurisdiction over the case and decide the merits of the appeal. *Gertz v. Robert Welch, Inc.,* 680 F.2d 527, 533 (7th Cir.1982) ("observations, commentary, or mere dicta touching upon issues not formally before the Court do not constitute binding determinations"). *See also Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979).

## B.

### *Alternatively, This Court Should Consider Guarantors' Constitutional Arguments*

If this Court decides to dismiss Mr. Bettison on its own, there should be an *en banc* consideration of whether the prejudice the remaining appellees will suffer rises to the level of a due process violation if the evidence provided by Mr. Bettison continues to be used against them in a decision on the merits. *Societe Internationale v. Rogers,* 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958) (Federal Rules of Civil

Procedure "must be read in light of the provisions of the Fifth Amendment that no person shall be deprived of property without due process of law"). This argument was not reached by the *en banc* Court because it concluded that it had no jurisdiction, and the Supreme Court was not faced with the issue.

## C.

### *Alternatively, The Court Should Reconsider En Banc The Original Panel's Decision On The Merits*

If this Court decides to issue a decision on the merits, there should be an *en banc* reconsideration of the original panel's decision. Because of the jurisdictional ruling, there was no *en banc* decision on the guarantors' argument that the original panel misapprehended the scope of the their obligations under the license agreement. The guarantors submit that they have a meritorious argument in that regard that should be considered.[2]

If this Court does not decide that issue, at a minimum the case should be remanded to the district court with directions that it determine whether the parties intended that the guarantors' obligations would cease upon Newman–Green's notice of termination or would continue until the license agreement was completed in accord with all its terms.

Dated this 1st day of September 1989.

1. "Only the questions set forth in the petition or fairly comprised therein will be considered by the Court." Supreme Court Rule 21.1(a). As framed by Newman–Green, the questions presented by the petition were:
   1. Do the Courts of Appeals have power to cure a defect in subject-matter jurisdiction, first noticed on appeal, by permitting the plaintiff to dismiss a nonessential nondiverse defendant?
   2. Is such curative action at the appellate level authorized by either 28 U.S.C. § 1653 or by Rule 21 of the Federal Rules of Civil Procedure or by a combination of both?
   3. If not, is the power to permit such curative action implied or inherent in the appellate jurisdiction conferred by 28 U.S.C. §§ 1291 and 1292?
   Although the Supreme Court is not limited to deciding issues expressly presented by the petition, the Court expressly stated that the

reason it granted the petition for certiorari was to resolve the conflict over whether a court of appeals has the *power* "to dismiss jurisdictional spoilers like [Mr.] Bettison." 109 S.Ct. at 2221–2.

2. The original panel ruled that the guarantors are required to compensate Newman–Green for 5% of NGV's net sales of values made with Newman–Green technology for as long as NGV sells or sold the valves. 832 F.2d at 422. This result was reached without regard to the language in the guaranty which limited the guarantors' liability to the period of time specified in the license agreement. The license agreement provided that it could be terminated by Newman–Green upon notice and Newman–Green gave such notice. The obligation to pay royalties then ceased. See Petition for Rehearing with Suggestion That Rehearing Be En Banc, for a fuller discussion of this issue.

Respectfully submitted,

/s/ Charles G. Albert

Frank K. Heap
Charles G. Albert
Three First National Plaza
Suite 3000
Chicago, Illinois 60602
(312) 372–1121
Attorneys for Defendants–Appellees
Alejandro Alfonzo–Larrain, Irene Larrain de Caplan, Alberto Tudela, Rafael Tudela and William L. Bettison

*Of Counsel:*

Bell, Boyd & Lloyd
Three First National Plaza
Chicago, Illinois 60602
(312) 372–1121